**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK HUNTSMAN, et al.,** | ) | **Case No. 1:05cv1739** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| **AKRON TOWER HOUSING PARTNERSHIP, et al.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

Pending before the Court is plaintiffs'[1] Motion for Class Action Certification under the Federal Rules of Civil Procedure 23(a) and (b)(2). (Docket No. 50). Defendants[2] oppose the motion (Docket Nos. 52, 53, 54, 55), and plaintiffs have filed a reply (Docket No. 58). For the reasons discussed herein, plaintiffs' motion is denied.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this putative class action against defendants seeking declaratory and injunctive relief and monetary damages alleged to have arisen from the relocation of

---

[1] Plaintiffs seek to represent former and potential tenants of Canal Park Towers. Individually identified plaintiffs include: Mark Huntsman, Robert R. Koenig, Kenneth Malone, Richard Massaro, Jr., Mary Lyn Zuendel, Robert Knicely, Alvin R. Whiteside, and Leslie Cieutat. The term "plaintiffs" shall be used to denote all of the party plaintiffs collectively. Where individual plaintiffs are discussed, the Court will so note.

[2] Plaintiffs maintain this action against defendants Akron Tower Housing Partnership, Rodriguez Limited, Inc., Anthony M. Rodriguez, Alphonso Jackson, in his capacity as Secretary of U.S. Department of Housing and Urban Development (HUD), HUD, the National Housing Group, Donald L. Plusquellic (Mayor Plusquellic), and the City of Akron (city). The term "defendants" shall be used to denote all of the party defendants collectively. Where individual defendants are discussed, the Court will so note.

[3] In its brief in opposition to plaintiffs' motion for class certification, defendant HUD raises the issue of whether plaintiffs have standing to bring this action against it. The Court granted the parties leave solely to resolve the issue of class certification. This issue will not be addressed at this time. Defendant HUD is free to raise this issue again in a motion to dismiss; at a time when the parties can have a fair and adequate opportunity to brief the issue.

residents from the Canal Park Tower (CPT or Canal Park). Canal Park, an eight-story building in downtown Akron, Ohio, previously housed federally subsidized efficiency apartments. Most, if not all, of the residents of Canal Park were low-income persons with mental or physical disabilities. These individuals were receiving HUD financed services in the building including, but not limited to, meals, transportation, and certain medical assistance. (Docket No. 1 at ¶¶ 2, 19). At the time of the filing of the complaint, defendant Akron Tower Housing Partnership was the owner of the building.

In 2000, defendant city ordered an engineering report of Canal Park, which indicated that the building was structurally adequate, but the garage was deteriorating. (Docket No. 53, Ex. A). According to defendants, efforts to stabilize the foundation proved unavailing. (Docket No. 37, Ex. B, Osborn Engineering Structural Evaluation, dated September 18, 2002).

In response to the deteriorating condition of the building, defendant HUD contracted with defendant National Housing Group to relocate Canal Park's tenants. A Personal Accommodation Plan was developed with each tenant to address his or her individual needs. (Docket No. 50, Ex. A, Affidavit of Bruce Winer at ¶ 6; Docket No. 57, Affidavit of Anthony M. Rodriguez at ¶ 5). While some of the residents remained in the building, many accepted housing vouchers, and others accepted placement in housing made available by the Akron Metropolitan Housing Authority (Docket No. 50, Ex. A at ¶ 9).

The present action was initiated on July 8, 2005.[4] In their complaint, plaintiffs, former, then-current, and prospective residents of Canal Park sought an order from the Court:

> a. preventing HUD from illegally terminating their federal Section 8 rental assistance payments and/or displacing them under threat of termination of their rental assistance payments as a result of the Owner's action;

[4] This matter was originally assigned to the docket of the Honorable Peter C. Economus. The action was reassigned to the docket of the Honorable Sara Lioi on March 19, 2007.

b. preventing HUD from demolishing CPT or transferring control of the CPT property to another entity for demolition in violation of HUD's duty to preserve affordable housing for low-income persons;

c. directing HUD to afford Plaintiffs their statutory right to participate meaningfully in the disposition planning process; [and,]

d. permitting the members of the class to remain at the CPT unless and until they choose to move voluntarily and there is found appropriate housing having the same services as now provided to them that meets their individualized needs so as to provide equal housing opportunities.

(Docket No. 1 at ¶ 116 (a)-(e)). Plaintiffs also sought compensatory and punitive damages against the non-federal defendants for breaches of their tenant leases, civil rights violations, and civil conspiracy under Ohio law. (Docket No. 1 at ¶ 116 (f)-(g)).

On September 14, 2005, plaintiffs filed a motion for a temporary restraining order and a preliminary injunction. (Docket No. 23). Specifically, plaintiffs sought orders restraining any sale, transfer, or demolition of Canal Park; requiring the resumption of meal and housekeeping services; halting the removal of tenants from the building; and, permitting former tenants who moved to return to their residences. Within days of the filing, however, the last of Canal Park's residents moved from the building. (Docket No. 57, Rodriguez Affidavit at ¶ 6).

Following the Case Management Conference, Magistrate Judge Limbert denied the request for a temporary restraining order and set a date for a hearing on plaintiffs' motion for preliminary injunctive relief. The issue of a preliminary injunction was fully briefed by the parties (Docket Nos. 23, 26, 27, 28, 29), and the Court conducted a hearing on the motion on October 28, 2005. At the conclusion of the hearing, the Court continued the matter until December 9, 2005. (Docket No. 40). Ownership of Canal Park was transferred from defendant Akron Towner Housing Partnership to defendant city on November 29, 2005. (Docket No. 57,

Rodrigeuz Affidavit at ¶¶ 6, 7). On December 7, 2005, plaintiffs voluntarily withdrew their request for a preliminary injunction. (Docket No. 48).

On January 6, 2006, plaintiffs filed their motion for class certification. Following the submission of opposition briefs, the Court stayed all discovery pending the resolution of the issue of class certification. (Docket No.63).

**I. <u>LAW AND ARGUMENT</u>**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) establishes four prerequisites to class certification: the class must be so numerous that "joinder of all members is impracticable;" there must be "questions of law or fact common to the class;" the claims of the representative party must be "typical" of those of the class; and the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. The party seeking certification of a class bears the burden of establishing the elements of a class action. *In re American Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

Once the prerequisites of numerosity, commonality, typicality, and adequacy of representation are met, parties seeking class certification must make the showing required by Fed. R. Civ. P. 23(b). To carry this burden, the moving parties must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class, or would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests." See Fed. R. Civ. P. 23(b)(1)(A) and (B). Rule 23(b)(1)(B) includes "limited fund" cases, instances in which numerous persons make claims against a fund insufficient to

satisfy all claims. Rule 23(b)(2) permits class certification where the requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits class certification where the requirements of Rule 23(a) are met and:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The district court must conduct a "rigorous analysis" of whether Rule 23 prerequisites are met before certifying a class. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *In re American Medical Sys.*, 75 F.3d at 1079 (*citations omitted*). In applying this analysis, the Court must not consider the merits of the action. *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 551 (S.D. Ohio 1999), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Rather, the Court must accept the allegations of the complaint as true. *In re Cincinnati Radiation Litig.*, 187 F.R.D. at 552. It is against this backdrop that the Court considers the issue of class certification.

In their motion, plaintiffs identify as their potential class:

> all persons who are a) disabled and b) past or potential residents of Canal Park Tower (CPT) from May 25, 2004 to November 29, 2005; and c) have or will be affected and injured because of the Defendants' conduct, actions and inactions, policies and practices concerning the closing of CPT in violation of federal and state law.

(Docket No. 50, Motion for Class Certification at 1). As such, their proposed class includes all

former residents of Canal Park, as well as those individuals who could have sought residence at Canal Park. The Court will now evaluate this proposed class, pursuant to Rule 23.

**A. Numerosity**

The numerosity component "of Rule 23(a)(1) requires that the class be 'so numerous that joinder of all members is impracticable. The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device.'" *In re American Medical Sys.*, 75 F.3d at 1078-79 (*citations omitted*). There is no strict numerical test for determining impracticability of joinder. Rather, "the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).

Practicability of joinder depends on the size of the class, the ease of identifying its members and determining their addresses, the ability to make service and their geographic dispersion. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981); *Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 175 (N.D. Ohio 1998). Joinder is generally considered more practicable when all members of the class are easily identified and can be found in the same geographic area. *Id.* "Impracticable" does not mean "impossible;" the representatives only need show that it is extremely difficult or inconvenient to join all the members of the class. *Levels*, 178 F.R.D. at 175.

Here, plaintiffs seek to certify a class consisting of all former and potential tenants of Canal Park. They estimate the size of the proposed class at 260 persons. (Docket No. 1 at ¶ 14; Docket No. 50 at 8). Of that number, plaintiffs believe that approximately 60 individuals comprise the subclass of persons who wish to move into Canal Park, but because of the alleged

actions of defendants, have been prevented from doing so. (Docket No. 1 at ¶ 13(c)). Plaintiffs offer Leslie Cieutat as the class representative for this proposed subclass. In his affidavit, Mr. Cieutat admits that he has never been a resident of Canal Park, nor has he ever applied for residency.[5]

The Court finds that the subclass of prospective tenants cannot be considered as part of any certified class because the individuals in this subclass lack standing. "In order to meet the 'irreducible constitutional minimum of standing,' three elements must be present:

> (1) the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court."

*White v. Smith & Wesson*, 97 F. Supp. 2d 816, 823 (N.D. Ohio 2000), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

As is discussed below, the injunctive relief portion of this litigation has been removed. The building has been sold, and all of the residents of Canal Park have been relocated. As such, this subclass of individuals cannot force defendants to place them in Canal Park. Moreover, since these individuals were not relocated from Canal Park, they cannot claim damages resulting from any failure to adequately accommodate their needs. Consequently, any injury they may perceive from the decision to close Canal Park cannot be redressed by a favorable decision of this matter.

---

[5] In the Complaint, it is alleged that Leslie Cieutat "informed his caseworker from Tri-County Independent Living Center, Inc. that he would like to move to CPT. The caseworker contacted CPT and was informed by CPT manager Paula Smoot that there was 'no more waiting list' for CPT and that CPT would not accept Cieutat's application for an apartment. As the result of the Defendants' conduct, actions and inactions, policies and practices, he has been prevented from becoming a resident of CPT and is not otherwise eligible for financial assistance that will enable him to move out of the nursing home and into decent, safe and sanitary housing. He is being forced to live in more restrictive housing than is appropriate for his needs." (Docket No. 1 at ¶ 43).

The remaining members of the proposed class, all former tenants who were relocated when Canal Park was closed, appear to number somewhere between 159 and 200 individuals. Defendants argue that plaintiffs have failed to demonstrate that joinder of these individuals would be impracticable.

The resolution of the issue of joinder does not turn on the specific number of potential class members involved, but, rather, upon the circumstances surrounding the case. *Fuzie v. Manor Care, Inc.*, 461 F. Supp. 689 (N.D. Ohio 1977). As plaintiffs note, the former tenants of Canal Park have been identified. (Docket No. 50 at 8, citing Affidavit of Bruce Winner, attached as Ex. A to Docket No. 50). Plaintiffs have not, however, offered any evidence to show that these individuals were relocated outside the general area of Canal Park. *See Fuzie*, 461 F. Supp. at 700 (joinder not shown to be impracticable where the majority of the class members are known and located in one geographical area). As such, it is unclear whether the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Notwithstanding the Court's concerns as to the impracticability of joinder, given the sheer size of the proposed class, the Court will accept the class definition proffered by plaintiffs, minus the prospective tenants of Canal Park.[6] The Court finds that this redefined class meets the numerosity requirement of Rule 23(a).

**B. <u>Adequacy</u>**

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002). To assess the adequacy of the representation, the Court must consider whether the

[6] Based upon the Court's finding that plaintiff Cieutat is not a party to this action, all claims raised by Cieutat are dismissed against all defendants.

class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two prongs to this inquiry: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Bacon v. Honda of America Mfg.*, 205 F.R.D. 466, 481 (S.D. Ohio 2001).

At the outset, the Court finds that class counsel is adequate. Current class counsel is clearly qualified to litigate a class action of this nature. Counsel has considerable experience with this type of representation and has demonstrated a willingness to diligently pursue the claims of the putative class members. *See Eisen*, 391 F.2d at 562; *Sweet v. General Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976).

With respect to the class representatives, plaintiffs argue that the named plaintiffs can adequately represent the class because the interests of the named plaintiffs are not "antagonistic to those of the class they seek to represent. Along with other class members, they seek to have defendants' discriminatory practices halted so that housing opportunities will be made available to all persons regardless of their disabilities." (Docket No. 50 at 14).

Defendants maintain that the named plaintiffs cannot adequately represent the proposed class because not all class members "count themselves among the 'injured' or require or want the relief requested by the named plaintiffs." (Docket No. 53 at 14). In support of this

contention, defendants note that there is evidence in the record that demonstrates that not all of the former tenants of Canal Park are dissatisfied with their current living situation. (Docket No. 50, Ex. A, Affidavit of Bruce Winer at ¶ 12). In fact, many of Canal Park's former residents prefer their current housing placement to their apartment at Canal Park. *Id*. According to defendants, the fact that the named plaintiffs do not necessarily share a common injury with the members of the class renders them inadequate to represent the class. *See Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).

As will be discussed in detail below, this is no longer an action for injunctive relief. When plaintiffs voluntarily abandoned that portion of the action, the focus was shifted to monetary damages. Consequently, the class members' generally shared desire to eradicate housing discrimination is less relevant than when this litigation was first commenced. Moreover, while they do share a common interest in recovering damages for any injuries they may have sustained as a result of this alleged discrimination, the amount and extent of these damages will vary considerably. Since plaintiffs do not necessarily share the same injury as the proposed class members, it is unclear whether they would be able to provide adequate representation. *See Bacon*, 285 F.R.D. at 481. The Court will, however, put aside these concerns and address the remaining requirements for a class action because the Court finds that even if the named plaintiffs are adequate class representatives, their claims fail to satisfy the prerequisites of commonality and typicality.

C. **Commonality and Typicality**

To establish the need for class certification, plaintiffs also have to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] class

representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Falcon*, 457 U.S. at 156, *quoting East Tex. Motor Freight Sys. v. Rodriquez*, 431 U.S. 395, 403 (1977). There need only be a single issue common to all members of the class to satisfy the commonality requirement. *Elkins*, 219 F.R.D. at 418. The mere fact that questions peculiar to each individual member of the class remain after common questions as to liability have been resolved does not dictate the conclusion that a class action is impermissible. *In re American Medical Sys.*, 75 F.3d at 1080. Not every common question will suffice, however, to establish commonality. The common issue must be such that its resolution will advance the litigation. *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998).

A plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re American Medical Sys.*, 75 F.3d at 1082. The Sixth Circuit has summarized the typicality standard in this manner: "As goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 397. Typicality is not present where a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Bacon*, 205 F.R.D. at 479.

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n. 13. Given the link between these two elements, the Court will address them together.

Plaintiffs argue that the proposed class shares commonality because "conduct complained of is identical for each class member: that because of their disability the defendants took action not to repair and ultimately close down CPT."(Docket No. 50 at 11). While conceding resulting injuries may differ among the former residents, plaintiffs argue that "each Plaintiff and Class Member was placed in this situation by the same underlying conduct." *Id.* Plaintiffs also argue that the typicality requirement is satisfied because "the named plaintiffs' interests.…coincide with those of the class since the individual plaintiffs all share the goal of insuring equal housing opportunity in Summit County housing market for those persons having mental disabilities." (Docket No. 50 at 13).

Defendants insist that the elements of commonality and typicality are not present because there is a wide disparity in claimed impairments of the named plaintiffs and the type of housing services they require. Affidavits provided by the named plaintiffs demonstrate that some individuals can apparently read and write, while others have difficulty; some can walk, while others must rely on third parties for transportation; some have issues with food intake, while others are more concerned with the availability of food. (Docket No. 50, Attachments 4, 5, 6). These differences have translated into a full range of perceived damages resulting from the defendants' relocation.

Plaintiff Huntsman, for example, who has diabetes, complains about the quantity and quality of food he receives from the Meals on Wheels program. (Docket No. 50, Attachment 5, Affidavit of Mark Huntsman at ¶¶ 3 & 4). In contrast, plaintiff Koenig, who is confined to a wheelchair, complains that his new residence is not as accessible for persons with disabilities as his residence at Canal Park. (Docket No. 50, Attachment 4, Affidavit of Robert Koenig at ¶ 6).

Equally unique is plaintiff Massaro's situation. Massaro, who suffers from certain mental impairments, laments that he now experiences more stress from having to plan his own meals, and fears that he might be evicted from his new residence for cooking meals at night. He also complains that he no longer lives within walking distance of the public library, and he no longer has the comfort that comes from knowing that the police department is nearby. (Docket No. 50, Attachment 6, Affidavit of Richard Massaro at ¶¶ 3, 4, 8, 13)

In order meet the requirements of commonality and typicality, it is essential that in proving his or her own claim, a named plaintiff is able to prove the claims of the other class members. *Elkins*, 219 F.R.D. at 425. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Levels,* 178 F.R.D. at 176, *quoting Falcon*, 457 U.S. at 156. Based upon the highly individualized nature of each named plaintiff's claims and resulting injuries, this is clearly not a case where a named plaintiff, in proving his own claim, could prove the claims of any other member of the class.

Defendants further note that the record shows that the experiences of the named plaintiffs, and the damages they claim resulted from defendants' efforts to relocate them, are anything but typical. While the named plaintiffs characterize being relocated from Canal Park as the main injury to themselves and the class, the record shows that other former residents were satisfied with the relocation. (Docket No. 50, Attachment 1, Affidavit of Bruce Winer, Public Housing Liason and Client Advocate for Community Support Services, Inc., at ¶ 12). Some of these former residents relocated to public housing that provides a controlled front entrance and a basic meal plan, services that were also at Canal Park. *Id.* at 8. In fact, many of the former residents of Canal Park prefer their current placement to their accommodations at Canal Park. *Id.*

at 12.

While plaintiffs claim that they share the common interest of eradicating housing discrimination, it is clear that not all the members of the proposed class believe that they were the victims of discrimination. Even the nature and extent of the injuries sustained by the named plaintiffs vary drastically. As such, the Court cannot find that the elements of commonality and typicality have been met.

Even if such were the case, any determination of damages would still require an intensive and individualized review of the circumstances surrounding each individual class member. Courts have consistently found class action certification to be inappropriate where an examination of individual class members' characteristics is required. *See e.g., Fuzie,* 461 F. Supp. at 700 (no class certification of action to enforce Medicaid regulations where the medical condition of each patient, the level of care required, and the reason for discharge would need to be assessed for each class member to determine liability and damages); *Metcalf v. Edelman,* 64 F.R.D. 407, 409 (N.D. Ill. 1974) (no class certification of action by welfare recipients seeking shelter exceptions for housing because of the varying circumstances of the recipients).

**D. Rule 23(b) Requirement**

Even if the prerequisites of Rule 23(a) had been satisfied, the motion for certification would ultimately fail because plaintiffs cannot demonstrate that they meet the requirements of Rule 23(b). In their motion, plaintiffs maintain that they have satisfied Rule 23(b)(2). An action in which both injunctive relief and monetary damages are sought may be certified as a class under Rule 23(b)(2), but only as long as monetary damages do not constitute the predominant type of relief requested. *Coleman v. GMAC.*, 296 F.3d 443, 446 (6th Cir. 2002).

The Sixth Circuit recently spoke to the issue of what "predominant" means with respect to proposed class claims involving injunctive relief and monetary damages. In *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 641 (6th Cir. 2006), the court held that Title VII actions in which plaintiffs seek individual compensatory damages are not appropriately brought as class actions under Rule 23(b)(2) because such individual claims for money damages will always predominate over requested injunctive or declaratory relief. In reaching this conclusion, the *Reeb* Court observed that "[w]here claims for individual damages become the more important form of requested relief, 'the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases….thereby making class certification under (b)(2) less appropriate.'" *Reeb*, 435 F.3d at 647, *quoting Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 411 (5th Cir. 1998).

Plaintiffs argue that their proposed class satisfies Rule 23(b)(2) because "[a]djudication of the named plaintiffs' claim will be dispositive of the claims of the other class members in that they are concerned with the discriminatory conduct alleged to by each of the defendants." (Docket No. 50 at 16-17). Defendants maintain, however, that this action does not fall within the parameters of Rule 23(b)(2) because it is now an action predominately for money damages for defendants' alleged failure to accommodate the individual needs of the former tenants of Canal Park. Defendants believe that *Reeb* and the other authority limiting the availability of class actions in cases involving requests for monetary damages dictate a finding that class certification is not appropriate.

This Court was faced with a similar situation in *Levels,* where former plant employees brought suit against their employer alleging that they had been subjected to a hostile

work environment based on race. The former employees sought both injunctive relief and monetary damages. Prior to the completion of litigation, the employer sold the plant in question to a third-party. Because the employer was no longer in a position to return the former workers to the plant, the Court found that the case became one for damages and was not appropriate for class certification under Rule 23(b)(2). *Levels*, 178 F.R.D. at 180.

Like the *Levels* Court, this Court is faced with an action that is now predominately one for monetary damages.[7] It is no longer possible to return the former tenants to Canal Park, so the only true relief left for these individuals is monetary damages. Because the claims for individual damages now predominant claims for any other type of relief, the decision in *Reeb* dictates a finding that class certification is not appropriate.

In their reply, plaintiffs do not challenge defendants' contention that the nature of the action is now predominately one for monetary damages. Rather, plaintiffs take issue with the limitations imposed by the Sixth Circuit in *Reeb*. Plaintiffs also attempt to distinguish *Reeb* on the ground that, unlike *Reeb*, "conduct complained of effects all members of the class alike."[8] (Docket No. 58 at 15). The record, however, would suggest otherwise.

As previously discussed, the perceived injuries sustained by the former tenants vary considerably. While some former tenants believe they are actually better off following the relocation, others believe that their lives have been significantly impaired by defendants' actions. Even the named plaintiffs complain of different injuries. The damages sought are clearly not in

---

[7]In the Complaint, plaintiffs also sought declaratory relief in the form of a declaration that the policies and practices of defendants are in violation of federal and state law. (Docket No. 1 at ¶ 4). While the request for declaratory relief remains, the request for damages is now the focal point of the litigation.

[8] Plaintiffs observe that: "[c]ertainly, there will be differences in damages, but this can be addressed as the *Reeb* panel points out by awarding declaratory or injunctive relief alone or in conjunction with compensatory and punitive damages that inure to the group benefit." *Id. (citations omitted).* The decision in *Reeb* makes clear, however, that where claims for individual compensatory damages of individual class members predominate over other requested declaratory or injunctive relief, class certification is not appropriate. *Reeb*, 435 F. 3d at 651.

the nature of a group remedy but are dependent on the individual circumstances of each former tenant. As such, class certification under Rule 23(b) is not appropriate. *See Reeb*, 436 F.3d at 651. *See e.g.*, *Coleman*, 296 F.3d at 448-49 (Equal Credit Opportunity Act plaintiffs seeking compensatory damages could not maintain a class action because the request for damages necessarily predominated over any requested injunctive or declaratory relief); *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635, *28 (M.D. Tenn. March 1, 2007) (class certification in Title VII action was not appropriate where analysis of "claims for compensatory damages [would not be] possible without evaluating each plaintiff's individual circumstances.); *Levels*, 178 F.R.D. at 180; *Elkins*, 219 F.R.D. at 427 (class certification was inappropriate under Rule 23(b)(2) where a determination of compensatory and punitive damages was dependent on individual circumstances).

## III. CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Class Action Certification (Docket No. 50) is hereby **DENIED**. The Court also dismisses all claims raised by plaintiff Leslie Cieutat against all defendants. Furthermore, the Court continues the stay of discovery imposed on June 7, 2006, and schedules this matter for a status conference on June 29, 2007 at 2:00 pm. Counsel and parties are required to attend.

**IT IS SO ORDERED.**

Dated: May 17, 2007

s/ Sara Lioi
Hon. Sara Lioi
United States District Judge